IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANA LARRY MYRICK,               )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    Civil Action No.:  2:16cv555-MHT-WC
                                 )
UNITED STATES DEPARTMENT OF      )
VETERANS AFFAIRS,                )
                                 )
          Defendant.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

On July 8, 2016, Plaintiff filed a Complaint (Doc. 1), alleging violations of his Second and Fifth Amendment rights.  On September 15, 2016, Plaintiff filed a Motion for Summary Judgment (Doc. 13) and amendment thereto (Doc. 14).  Subsequently, the United States Department of Veterans Affairs ("VA") filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment (Doc. 16).  On October 13, 2016, the undersigned entered an Order (Doc. 18) directing the VA to show cause as to why Plaintiff's motion should not be granted and directing Plaintiff to show cause as to why the VA's motion should not be granted.  Plaintiff filed a response (Doc. 19) on November 4, 2016, and, after being granted an extension of time, the VA filed a response (Doc. 24) on December 5, 2016.  This case was referred to the undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate."  Order (Doc. 4).  As the matters are fully briefed before the court, the motions (Docs. 13, 16) are ripe for recommendation to the United States District Judge.

## I.    Plaintiff's Complaint & Relevant Federal Law

Plaintiff's complaint before the court is a form complaint for 42 U.S.C. § 1983 actions.  Under the "Basis for Jurisdiction" section of the form, Plaintiff indicates that he is bringing his suit against federal officials for violations of his constitutional rights—*i.e.*, he is asserting a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).   While lacking in detail, the complaint sets forth allegations that Plaintiff's Second and Fifth Amendment rights were violated by the VA when it "placed [him] on the Federal Bureau National Instant Background Check System" thereby prohibiting him from exercising his Second Amendment rights "without due process under law protected by the [Fifth] [A]mendment of the constitution."  Doc. 1 at 3-4.  Plaintiff alleges that the VA placed him in the database because it determined that Plaintiff was incompetent to handle his financial affairs, a standard that Plaintiff feels is arbitrary as to whether he should be allowed to possess a firearm.  *Id*. at 5.  For these wrongs, Plaintiff asks the court to "reinstate" his Second Amendment rights and force removal of his name from the National Instant Background Check System ("NICS") database.[1] *Id*. at 6.

Because the heart of Plaintiff's complaint centers around his inability to exercise his Second Amendment rights due to his placement in the NICS database, the undersigned will

---

[1] Plaintiff also requests that the court "stop the veterans administration from this denial of rights to other veterans."  To the extent that Plaintiff is seeking to protect the rights of other veterans in a class action lawsuit, Plaintiff, proceeding *pro se*, cannot do so.  *Wheeler v. Jones*, Case No. 5:16-cv-130-MP-GRJ, 2016 WL 659114, at *1 (N.D. Fla. May 12, 2016).  As a layman in the law, Plaintiff cannot "fairly and adequately protect the interests of the class," as required by Federal Rule of Civil Procedure 23(a)(4).  *Id*.

provide a brief discussion regarding gun control laws in the United States, and the VA's role within the statutory scheme.

The Gun Control Act of 1968 ("GCA") prohibits certain categories of individuals from shipping, transporting, possessing, or receiving firearms. 18 U.S.C. § 922. These categories of individuals include, amongst others, those who have been convicted of a felony or of a misdemeanor involving domestic violence, those who have been dishonorably discharged from the Armed Forces, and those who have "been adjudicated as a mental defective or [have] been committed to any mental institution." *Id*. at § 922(d)(4). In 1993, Congress enacted the Brady Handgun Violence Prevention Act ("Brady Act") as an amendment to the GCA. The Brady Act directs the Attorney General to establish a database that firearms dealers must consult prior to transferring a firearm to a potential buyer. 18 U.S.C. § 922(t)(1)(A); 28 C.F.R. § 25.1. That database, known as the NICS database, is managed by the FBI Criminal Justice Information Services Division's NICS Section. *See Franklin v. Lynch*, Case No. 3:16-cv-36, 2016 WL 6879265, at *3 (W.D. Penn. Nov. 21, 2016). Functioning as a background-check system, the NICS database alerts dealers when a potential purchaser falls within one of the categories of individuals that the GCA prohibits from purchasing a firearm. *See Abramski v. United States*, 134 S. Ct. 2259, 2263 (2014).

In the wake of the 2007 mass shooting at the Virginia Polytechnic Institute and State University, Congress enacted the NICS Improvement Amendments Act ("NIAA"). *Franklin*, 2016 WL 6879265, at *3. The purpose of the NIAA is to improve the NICS background-check system by facilitating the FBI's access to records from a variety of

sources relating to the criminal history and mental health of potential firearm purchasers. *See generally* NIAA, PL 110-180, January 8, 2008, 122 Stat 2559.   Included in those sources are federal departments and agencies[2]—like the VA—that are required to share relevant records with the Attorney General concerning the mental health status of veterans. *See* NIAA, Tit. 2 § 101(C) ("If a Federal department or agency . . . has any record of any person demonstrating that the person falls within one of the categories [of individuals prohibited from purchasing a firearm under 18 U.S.C. § 922], the head of such department or agency shall, not less frequently than quarterly, provide the pertinent information contained in such record to the Attorney General.").   Thus, if the VA makes a determination that a veteran is incompetent, the VA must report that finding to the Attorney General, who subsequently causes that information to be entered into the NICS database.[3]

For individuals aggrieved by an inability to purchase a firearm due to a restriction imposed by the GCA, 18 U.S.C. § 925A provides a remedy.   That section states that

> [a]ny person denied a firearm pursuant to subsection (s) or (t) of section 922-
>
> (1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, *or by the national instant criminal background check system* established under section 103 of the Brady Handgun Violence Prevention Act . . .

---

[2] NICS defines federal agency as "any authority of the United States that is an 'Agency' under 44 U.S.C. § 3502(1), other than those considered to be independent regulatory agencies, as defined in 44 U.S.C. § 3502(10)." 28 U.S.C. § 25.2.  Agency is defined in 44 U.S.C. § 3502 as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . ."  Accordingly, the VA is clearly a federal agency, as contemplated by the NICS, that is required to share its records with the Attorney General concerning individuals who fit within the restricted categories of the GCA.

[3] The NIAA also requires federal agencies to notify the Attorney General when the basis for restriction no longer applies.  NIAA, Tit. 2 § 101(D)(ii).  Upon receiving such notice, the Attorney General shall ensure that the NICS database is updated within thirty days.  *Id.*

. . . .

> may bring an action against the State or political subdivision responsible for
> providing the erroneous information, or responsible for denying the transfer,
> or against the United States, as the case may be, for an order directing that
> the erroneous information be corrected or that the transfer be approved, as
> the case may be. . . .

18 U.S.C. § 925A (emphasis added).  Therefore, if an individual is unable to purchase a firearm because he is listed in the NICS database as a result of a federal agency's report of incompetency, the individual may bring an action against the United States for an order directing that erroneous information be corrected, or that his firearm transaction be approved. *Id.*

With that framework in mind, the undersigned turns to the motions of the parties.

## II.    The Parties' Motions

Prior to the VA answering or responding to Plaintiff's complaint, Plaintiff filed a motion for summary judgment (Doc. 13).  In that motion, Plaintiff argues in conclusory fashion that summary judgment should be granted because the VA "has assumed the authority of the Judicial branch" by placing Plaintiff's name in the NICS database when such determination should be reserved for the courts.  Doc. 13 at 2.  Fleshing out Plaintiff's argument, it appears that Plaintiff is asserting that his name should have never been included in the NICS database—and that it should now be removed—because his adjudication of incompetency, which was the basis of his inclusion, was rendered by the VA, not by a court.  *Id.* at 1-2.  Indeed, Plaintiff asserts that the judicial system alone is tasked with the responsibility of determining whether an individual has a mental defect that would trigger the placement of the individual's name in the NICS database.  *Id.* at 2.  For

further support of his argument, Plaintiff notes that the VA's incompetency determination was based solely upon his inability to manage his financial affairs, which is arbitrary to his fitness to purchase a firearm, as it has no bearing on whether he is a danger to himself or to the public.  *Id*. at 2-3.

Subsequent to Plaintiff's motion for summary judgment, the VA filed a motion to dismiss, or in the alternative, a motion for summary judgment (Doc. 16).[4]  In general terms, that motion argues that (1) this court lacks subject matter jurisdiction because Plaintiff, whose name was never entered into the NICS database, does not have standing to pursue his claims, and (2) Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because he has not stated facts that support a plausible *Bivens* claim. *See generally* Doc. 17.  For support of its first argument, the VA attached an affidavit from Mr. Christian F. Elkington, Jr., who is an attorney for the VA.  *See* Doc. 17-1.  In that affidavit, Mr. Elkington states that, upon receipt of Plaintiff's complaint, he "caused a search of the NICS database to be conducted for [Plaintiff's] name."  *Id*. at 2, ¶ 6.  Mr. Elkington states that he was informed, on September 20, 2016, by the Veterans Benefits Administration "that the FBI had conducted a search of the NICS database and that [Plaintiff] was not included in their records.  Thus, [Plaintiff] is currently free of any NICS firearms prohibitions."  *Id*. at 2, ¶ 7.

---

[4] The undersigned declines to convert the VA's motion to dismiss into a motion for summary judgment and will instead proceed to evaluate the concerns raised about the court's subject matter jurisdiction according to Federal Rule of Civil Procedure 12(b)(1).

The undersigned entered an Order (Doc. 18) directing both parties to show cause as to why the other party's motion should not be granted.  Plaintiff responded first, arguing that he indeed has standing to pursue his claim because he was denied the purchase of a firearm in June 2014 due to his inclusion in the NICS database.  Doc. 19 at 1-2.  Plaintiff also provided a document, not referenced in his complaint, which purports to show the denial of the firearm purchase he references.  *Id*. at 7.

Upon review of Plaintiff's response and the newly presented document, the VA requested additional time from the court to respond to Plaintiff's motion for summary judgment.  *See* Def.'s Mot. (Doc. 20).  The court granted the VA's request for an extension.  *See* Order (Doc. 21).  On December 5, 2016, the VA responded.  *See* Doc. 24.  After conducting an FBI audit of the NICS Index (which is the specific portion of the NICS database containing records relating to persons prohibited from purchasing firearms under 18 U.S.C. § 922(g)), the VA asserted that Plaintiff was no longer in the NICS Index and that there were no records prohibiting Plaintiff for firearms purposes.  *Id*. at 4.  Thus, while the VA changed its position as to whether Plaintiff had *ever* been listed in the NICS database (which was the basis of the VA's challenge to the court's subject matter jurisdiction in its motion to dismiss), the VA argues in its response to Plaintiff's motion for summary judgment that the motion should be denied because (1) this court lacks subject matter jurisdiction because Plaintiff is no longer listed in the NICS database, making his claim moot, and (2) that Plaintiff's claims should be dismissed under Federal Rule of Civil

Procedure 12(b)(6) because he has not stated facts that support a plausible *Bivens* claim.[5] *Id*. at 4-8.

### III.    The Court's Subject Matter Jurisdiction

It is well-settled that a court should determine, at the earliest stage possible, whether it has jurisdiction over the claims of a plaintiff.  *Univ. of S. Ala. v. The Am. Tobacco Co., et al.,* 168 F.3d 405, 410 (11th Cir. 1999).  "The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties.  Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'"  *Jackson v. Seaboard Coast Line R.R.,* 678 F.2d 992, 1000–01 (11th Cir. 1982) (quoting *Am. Fire & Cas. Co. v. Finn,* 341 U.S. 6, 18 (1951)) (internal footnotes and citations omitted).  Here, the VA raises concerns of the court's jurisdiction through its motion to dismiss and in its response to Plaintiff's motion for summary judgment.  In its motion to dismiss, the VA argues that Plaintiff lacks standing because Plaintiff was never listed in the NICS database.  Doc. 17 at 5-6.  In its response to Plaintiff's motion for summary judgment, however, the VA acknowledges that Plaintiff at one time was listed in the NICS database.  Doc. 24 at 6 (Plaintiff's "firearms restrictions in the NICS Index database *have been removed*.") (emphasis added).  Nonetheless, the VA maintains that the court lacks subject matter jurisdiction because Plaintiff is no longer listed in the database, making his claims moot.  *Id*. at 4-7.  Thus, the undersigned turns first to determine

---

[5] The VA's Rule 12(b)(6) argument in its response to Plaintiff's motion for summary judgment is the same as the Rule 12(b)(6) argument it presented in its motion to dismiss.

whether the court has subject matter jurisdiction to hear Plaintiff's Second and Fifth Amendment claims.

A. *The Court's Subject Matter Jurisdiction Over Plaintiff's Second Amendment Claim*

Article III of the Constitution limits the jurisdiction of federal courts to the consideration of live cases and controversies.  U.S. Const. Art. 3 § 2, cl. 1.  "Standing is a doctrine that 'stems directly from Article III's "case or controversy" requirement,' and thus it 'implicates [a court's] subject matter jurisdiction.' *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003)."  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005).   To demonstrate constitutional standing, a party must "allege that (1) he has suffered an actual or threatened injury, (2) the injury is fairly traceable to the challenged conduct . . . and (3) the injury is likely to be redressed by a favorable ruling." *Phoenix of Broward, Inc. v. McDonald's Corp.,* 489 F.3d 1156, 1161 (11th Cir. 2007).  Whether a plaintiff has standing to pursue a claim is determined at the time suit is filed. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (It is well settled that at the time a plaintiff brings suit he must have standing to prosecute his claim; he must have a "personal stake" in the outcome of the litigation.).

Derived directly from the case or controversy limitation in Article III, the doctrine of mootness deprives a federal court of jurisdiction when there is no longer a live case or controversy between the parties.  *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1335-36 (11th Cir. 2001) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.")).  As the Eleventh Circuit has explained, "'a case is moot when it no longer

presents a live controversy with respect to which the court can give meaningful relief.'"
*Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.,* 225 F.3d
1208, 1216–17 (11th Cir. 2000) (quoting *Ethredge v. Hail,* 996 F.2d 1173, 1175 (11th Cir.
1993)).   "Mootness can be characterized as the doctrine of standing set in a time frame:
The requisite personal interest that must exist at the commencement of the litigation
(standing) must continue throughout its existence (mootness)." *Cook Inlet Treaty Tribes
v. Shalala,* 166 F.3d 986, 989 (9th Cir. 1999) (internal quotation marks omitted).   "Any
decision on the merits of a moot case or issue would be an impermissible advisory opinion."
*Fla. Ass'n of Rehab. Facilities,* 225 F.3d at 1217.   Thus, if there is no longer a possibility
that a plaintiff can obtain relief for his claim, that claim is moot and must be dismissed for
lack of jurisdiction. *Al Najjar,* 273 F.3d at 1336 ("If events that occur subsequent to the
filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or
appellant meaningful relief, then the case is moot and must be dismissed.").

In the VA's motion to dismiss and in its response to Plaintiff's motion for summary
judgment, the VA challenges the court's subject matter jurisdiction to hear Plaintiff's
Second Amendment claim.   Because the VA does not challenge the sufficiency of
Plaintiff's complaint in alleging subject matter jurisdiction, the VA's challenge is a factual,
rather than facial, challenge to the court's subject matter jurisdiction.[6]   "On a factual attack

---

[6] Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms:
"facial attacks" and "factual attacks." *Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir. 1990).
Facial attacks on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently
alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the
purposes of the motion." *Id.* at 1529 (quoting *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th
Cir. 1980)).   "'Factual attacks', on the other hand, challenge 'the existence of subject matter jurisdiction in

of subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of [the] plaintiff's cause of action." *Garcia v. Copenhaver, Bell, & Assocs., M.D.'s, P.A.,* 104 F.3d 1256, 1261 (11th Cir. 1997).   If the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's cause of action, then:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence,* 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).

On the other hand, if an attack on subject matter jurisdiction also implicates an element of the cause of action, then:

> [T]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. . . . Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion. . . .

---

fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.*

*Williamson v. Tucker,* 645 F.2d 404, 415-16 (5th Cir. 1981).

With those principles in mind, the undersigned examines whether the VA's attack on the court's subject matter jurisdiction—*i.e.*, that Plaintiff's claims are moot because he is no longer listed in the NICS database—implicates the merits of Plaintiff's Second Amendment *Bivens* claim.  A *Bivens* action, as previously noted, is a claim against a federal official for violations of an individual's constitutional rights.  Clearly, whether Plaintiff's name is currently listed in the NICS database does not implicate the merits of a *Bivens* claim.[7]  Therefore, because the VA's factual attack on the court's subject matter jurisdiction does not implicate the merits of Plaintiff's Second Amendment claim, the undersigned is free to weigh the evidence provided by the parties to determine whether the court has subject matter jurisdiction to hear the claims.

Although Plaintiff's complaint states that his harm has been ongoing since 2007, it is clear from the filings and evidence of the parties that Plaintiff is no longer included in the NICS database.  The VA provides the court with two affidavits in its response to Plaintiff's motion for summary judgment supporting that conclusion.  First, affiant Tina B. Collins, who is a custodian of records of the NICS Index files, declares that on November 29, 2016, she "conducted an audit of information maintained in the NICS Index regarding an individual identified as Dana Larry Myrick . . . [and found that] [t]he NICS Index does not contain a prohibiting record on Mr. Myrick for firearms purposes."  Doc. 24-1 at 3, ¶

---

[7] Further, even if Plaintiff had brought his claim regarding his inability to purchase a firearm pursuant to 18 U.S.C. § 925A, the VA's challenge would still not implicate the merits of Plaintiff's claim, as such a claim requires the reporting of erroneous information in the NICS database.  Plaintiff's current status in the NICS database does not implicate whether such information is erroneous.

5.   Second, VA attorney, Mr. Christian Elkington, Jr., declares that, upon receipt of Plaintiff's complaint, he contacted the FBI to perform a search of the NICS database to determine whether Plaintiff was included in their records.  Doc. 24-2 at 1, ¶ 8.  Mr. Elkington declares that, on September 20, 2016, after the conclusion of that search, the FBI informed him that Plaintiff is not listed in the NICS database.  *Id.* at 2, ¶¶ 10, 11.  Although Mr. Elkington's previous affidavit to the court, which was attached to the VA's motion to dismiss, reported that Plaintiff was *never* included in the NICS database, *see* Doc. 17-1 at 3, ¶ 8, Mr. Elkington declares that statement was erroneous, as he did not request a retrospective check for any *previous* denials as to Plaintiff.  Doc. 24-2 at 3, ¶¶ 13, 14.  Nonetheless, Mr. Elkington maintains in both affidavits that Plaintiff is not currently listed in the NICS database, and that Plaintiff is not prohibited at this time by the NICS regulations or requirements from exercising his Second Amendment rights.  *Id.* at 3, ¶ 15; Doc. 17-1 at 3, ¶ 9.

Assuming momentarily that Plaintiff had standing to pursue his claims at the time he filed suit on July 8, 2016—*i.e.*, that his name was included in the NICS database on that date—it is clear that his Second Amendment claim is now moot as his name is no longer included in the database.  Nothing in the filings of the parties contradict the affidavits provided by the VA or support a contrary conclusion.  Aside from the document showing that he was unable to purchase a firearm in June 2014 (which was approximately two years prior to Plaintiff filing suit), Plaintiff provides no evidence—nor does he suggest factually—that he is *currently* listed in the NICS database, or that his Second Amendment

rights are *now* being violated.[8]  Because the affidavits provided in this case indicate that Plaintiff is no longer listed in the NICS database or prohibited from exercising his Second Amendment rights in any way, there is no longer a live case or controversy between the parties, and the court cannot provide the relief that Plaintiff requests.  Thus, the undersigned concludes that Plaintiff's Second Amendment claim is moot, and, as such, this court lacks subject matter jurisdiction to hear the claim.[9]

   B. *The Court's Subject Matter Jurisdiction Over Plaintiff's Fifth Amendment Claim*

        To the extent that Plaintiff's complaint can be construed to allege that the VA violated his right to due process because of its role in reporting incompetency determinations to the Attorney General, this court lacks subject matter jurisdiction to hear that claim.  Although presented as a *Bivens* action for a Fifth Amendment due process

---

[8] The only colorable assertions provided by Plaintiff that could cut against the VA's mootness argument are his statements that (1) he has "received no confirmation from the VA that [his] name has been removed [from the NICS database] and the FBI is unable to confirm [his] current status by telephone[,]" and (2) although he appealed the VA's incompetency decision, he "never received any verification back from the VA and [he] mistakenly assumed that it had been accepted and [he] was not specifically notified that [he] had in fact been added to the NICS database."  Doc. 19 at 2, 3.  Thus, generously construing Plaintiff's statements, it appears that he can only speculate that his name remains in the NICS database because he has received no confirmation otherwise.  Unfortunately for Plaintiff, his lack of certainty as to his status in the database cannot overcome the evidence before the court indicating that he is not.

[9] Although there is an exception to the mootness doctrine when the action being challenged by the lawsuit is capable of being repeated *and* evading review, the Eleventh Circuit has held that "this exception is 'narrow,' and applies only in 'exceptional situations.'"  *Al Najjar,* 273 F.3d at 1336 (quoting *Dow Jones & Co. v. Kaye,* 256 F.3d 1251, 1256 (11th Cir. 2001)) (internal quotations omitted).  In particular, the exception can be invoked only when "(1) there [is] a reasonable expectation or a demonstrated probability that the *same* controversy will recur involving the *same* complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Sierra Club v. Martin,* 110 F.3d 1551, 1554 (11th Cir. 1997) (emphasis added).  Simply put, "[t]he remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." *Al Najjar,* 273 F.3d at 1336.  Here, there is no reasonable expectation or demonstrated probability that the VA will once again declare or seek to declare Plaintiff incompetent.  As such, the undersigned declines to apply the exception to the mootness doctrine in Plaintiff's case.

violation, Plaintiff's claim in essence is a challenge to the constitutionality of the NIAA provision that requires the VA to report those it adjudicates incompetent to the Attorney General for inclusion in the NICS database.  Plaintiff argues that the VA has no authority to adjudicate him incompetent for purposes of the GCA.  *See generally* Docs. 13, 19. Instead, Plaintiff believes that a court should make that determination, making the VA's adjudication of incompetency a violation of his due process rights.[10]  *Id*.  Further, Plaintiff argues that the VA's incompetency adjudication was based solely on the opinion of a physician who found him unable to handle his financial affairs, and that such a procedure does not satisfy due process, particularly considering that his inability to handle his financial affairs has no bearing on his fitness to purchase a firearm.  *Id*.

Like Plaintiff's Second Amendment claim, Plaintiff's Fifth Amendment claim is fatally flawed because of the mootness doctrine.  Plaintiff seeks declaratory and injunctive relief from this court by petitioning the court to reinstate his Second Amendment rights and force removal of his name from the NICS database.  He does not request damages, nominal or otherwise.  Because the court can no longer provide the relief Plaintiff requests, Plaintiff no longer has a personal stake in the litigation of his Fifth Amendment claim.  *See generally Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140-41 (2d Cir. 1994) ("This court has consistently held that students' declaratory and injunctive claims against the universities that they attend are mooted by graduation of the students, because after

---

[10] It does not appear that Plaintiff is challenging the constitutionality of 18 U.S.C. 922(g)(4)'s prohibition on possession of firearms by the mentally ill—only that the VA cannot make the determination that an individual is incompetent for purposes of the GCA.

their graduation and absent a claim for damages, it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.") (internal citations removed).  Indeed, assuming *arguendo* that the court were to determine that the statutory scheme of which Plaintiff complains is unconstitutional, or that the VA denied him due process, that determination would provide no relief for Plaintiff because he is not currently injured by, nor is he threatened by future injury from, the statutory scheme or the VA's procedure for determining incompetency—whatever that procedure may be.  *See O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); *see also Gordon v. Holder*, 85 F. Supp. 3d 78, 84 (D.C. 2015) (holding that a store owner's constitutional challenge of tax provisions was constitutionally moot once he closed his store with no intention of reopening the business); *Willan v. Menomonee Falls Sch. Bd.*, 658 F. Supp. 1416, 1419-20 (E.D. Wisc. 1987) (holding that the constitutional challenge of a state statute was moot where the plaintiff requested declaratory and injunctive relief arising from past conduct of the defendants).  Because Plaintiff has not requested damages of any kind,[11] and because the court cannot provide Plaintiff the injunctive relief he requests, Plaintiff's Fifth

---

[11] Relief if the form of damages for a past violation of constitutional rights is not adversely affected by the mootness doctrine.  *See Fox*, 42 F.3d at 141 ("The inability of the courts to provide relief to Plaintiffs after they left the SUNY system is logically dependent upon the absence of a claim for damages, because relief in the form of damages for a past violation of their constitutional rights is not adversely affected by that departure.") (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 393-94 (1981)).

16

Amendment claim is moot, and this court lacks subject matter jurisdiction to hear the claim.[12]

### C. Failure to State a Claim

Assuming *arguendo* that the court has subject matter jurisdiction to hear Plaintiff's claims, Plaintiff's claims are due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, a court accepts the nonmovant's allegations as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), and construes the pleading in the nonmovant's favor, *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir. 1993).  In analyzing the sufficiency of the pleading, the court is guided by a two-prong approach: (1) the court is not bound to accept conclusory statements of the elements of a cause of action, and (2) where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 663-64 (2009).   "[A nonmovant's] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).  To survive a motion to dismiss, a pleading need not contain "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

---

[12] The undersigned again determines that the exception to the mootness doctrine does not apply here. Plaintiff has not alleged that the VA is currently seeking to adjudicate him incompetent or that there is a future possibility of that occurrence. *Burke v. Barnes*, 479 U.S. 361, 364 (1987) (holding that respondents could not overcome mootness by pointing to a possible future lawsuit; that dispute, if it arose, "would not be between the parties to this case").

Here, Plaintiff's claims are due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for the following reasons.

### 1. *Failure to State a* Bivens *Claim*

Plaintiff's form complaint asserts a 42 U.S.C. § 1983 action against federal officials—*i.e.*, a *Bivens* claim.  Doc. 1 at 3.  As previously noted, a *Bivens* claim provides relief for plaintiffs who have suffered constitutional violations at the hands of federal officials. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 763 (11th Cir. 2010) (In a *Bivens* action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Importantly, here, Plaintiff does not allege that an individual federal official committed a specific wrongful act that violated his Second or Fifth Amendment rights.  *See FDIC v. Meyers*, 510 U.S. 471, 486 (1994) (noting that the purpose of a *Bivens* claim is to deter the federal official). Instead, Plaintiff brings his suit against the VA, a federal agency, which is impermissible under *Bivens*.  *Horne v. Soc. Sec. Admin.*, 359 F. App'x 138, 144 (11th Cir. 2010) (concluding that the district court did not err in finding that the plaintiff failed to state a claim for relief against the defendants, which were federal agencies, and dismissing the claims during 28 U.S.C. § 1915(e) review).  Thus, it is clear, on the face of the complaint, that Plaintiff fails to state a *Bivens* claim for his alleged Second and Fifth Amendment violations.[13]  As such, the VA's motion to dismiss is due to be granted.

---

[13] Plaintiff asserts no facts to indicate that permitting amendment to the complaint would rectify this deficiency.  Indeed, Plaintiff does not assert that any particular individual is responsible for the alleged wrongs.  Instead, he argues that the NIAA statutory scheme and the VA's procedures for determining and for reporting incompetency to the Attorney General ultimately led to violations of his constitutional rights.

18

### 2. *Failure to State a Claim Pursuant to 18 U.S.C. § 925A*

Had Plaintiff brought his Second Amendment claim pursuant to 18 U.S.C. § 925A, Plaintiff would still fail to state a claim for which relief may be granted.  Assuming that the court allowed Plaintiff to substitute the United States as the proper party to an 18 U.S.C. § 925A action, Plaintiff has stated no facts to indicate that the information that was contained in the NICS database concerning him was erroneous.  Notably, Plaintiff does not argue that the VA never determined that he was incompetent or that the VA incorrectly reported that he was incompetent when he was not.  Instead, he argues only that the VA did not have the requisite authority to make a determination as to his competency for purposes of the GCA and that their procedures for doing so violated his right to due process.  As such, even if the court were to allow Plaintiff to amend his complaint to assert a claim against the United States pursuant to 18 U.S.C. § 925A, Plaintiff has not asserted facts that state a claim for relief under that statute, and the claim should be dismissed without opportunity to amend.[14]

### 3. *Failure to State a Claim for Fifth Amendment Violations*

In addition to Plaintiff's failure to properly assert a Bivens claim for violations of due process, Plaintiff's Fifth Amendment claim fails for another reason—Plaintiff's complaint is completely void of facts to support the claim.  Indeed, Plaintiff does not allege

---

As such, the undersigned concludes that allowing Plaintiff to amend his complaint to name individual federal officials as defendants would be futile.

[14] Because Plaintiff has not alleged facts that would support the argument that the information regarding Plaintiff that was contained in the NICS database was erroneous, the undersigned concludes that allowing amendment to the complaint would be futile.

that the VA failed to provide him with a hearing prior to adjudicating him incompetent,[15] or that the VA failed to provide him with a post-deprivation remedy.[16]  Instead, he alleges that the VA "imposed second amendment restrictions" upon him by placing him on the NICS database "without granting [him] any provisions of due process[.]"  Doc. 1 at 5. Nothing more.  Such conclusory allegations are insufficient to satisfy Federal Rule of Civil Procedure 12(b)(6), and the claim should be dismissed.

### IV.    Conclusion

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the VA's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 16) should be GRANTED, and Plaintiff's Motion for Summary Judgment (Doc. 13) should be DENIED.   It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 15, 2017**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the

---

[15] *Zinermon v. Burch,* 494 U.S. 113, 127 (1990) ("Applying this test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property").

[16] *Zinermon,* 494 U.S. at 128 ("In some circumstances, however, the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process.").

right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*). The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 1st day of March, 2017.


/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE